[Cite as *Bajzer v. Bajzer*, 2012-Ohio-252.]

STATE OF OHIO         )             IN THE COURT OF APPEALS
                       )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

KIMBERLEE BAJZER                 C.A. No.      25635

     Appellee

     v.                            APPEAL FROM JUDGMENT
                                ENTERED IN THE
CHRISTOPHER T. BAJZER           COURT OF COMMON PLEAS
                                COUNTY OF SUMMIT, OHIO
     Appellant                CASE No.     2006-03-0764

DECISION AND JOURNAL ENTRY

Dated: January 25, 2012

BELFANCE, Presiding Judge.

{¶1} Appellant, Christopher Bajzer, appeals an order of the Summit County Court of Common Pleas, Domestic Relations Division, that increased his child support obligation. This Court affirms.

**I.**

{¶2} The Bajzers divorced in July 2008 after a marriage of eleven years. They are the parents of two children aged eight and ten, respectively, as of the date of the divorce. The divorce decree granted Ms. Bajzer $10,000 in spousal support for twenty-four months and ordered Mr. Bajzer to pay $1,000 per month in child support. As is frequently the case, matters resolved by the divorce decree did not remain so for long. Ms. Bajzer moved to modify Dr. Bajzer's child support obligation on August 18, 2009, and the parties have vigorously litigated the issue of child support since that time. On May 7, 2010, the trial court ordered Dr. Bajzer to pay $6,000 per month in child support under R.C. 3119.04(B). In the course of its

considerations, the trial court imputed income to Ms. Bajzer in the amount of $45,000. The trial court also ordered Dr. Bajzer to pay $10,000 of her attorney's fees.

{¶3} Dr. Bajzer timely appealed, raising five assignments of error. Some of his assignments of error are related, and so they are addressed together.

II.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO SUPPORT ITS CHILD SUPPORT DEVIATION BY SPECIFICALLY STATING THE FACTS THAT ARE THE BASIS FOR A DEVIATION PURSUANT TO R.C. 3119.23 AND WHEN IT FAILED TO ACCURATELY EVALUATE THE NEEDS AND STANDARD OF LIVING OF THE CHILDREN AND PARENTS."

### ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED WHEN IT FAILED TO APPLY THE CASE LAW OF THE 9TH DISTRICT AS PRECEDENT IN DETERMINING AN APPROPRIATE UPWARD DEVIATION OF CHILD SUPPORT."

### ASSIGNMENT OF ERROR III

"THE TRIAL COURT ERRED WHEN IT ORDERED AN UPWARD DEVIATION IN CHILD SUPPORT IN ORDER TO ACCOMPLISH AN EQUALIZATION OF INCOME."

{¶4} In his first three assignments of error, Dr. Bajzer argues that the trial court abused its discretion by deviating upward from the child support guidelines in granting Ms. Bajzer's motion to modify. Because the trial court did not order an upward deviation and the modified child support award was not an abuse of the trial court's discretion, Dr. Bajzer's assignments of error are not well-taken.

{¶5} As a general rule, child support is calculated using the worksheet provided in R.C. 3119.022 with reference to the basic child support schedule set forth in R.C. 3119.021. When

the combined gross income of the parents exceeds $150,000, however, child support is determined under R.C. 3119.04(B), which provides:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount.

The level of support for a combined gross income of $150,000 is the starting point from which a trial court exercises its discretion in fashioning a child support award for parents with higher incomes. R.C. 3119.04(B). Downward deviations from that minimum require a determination "that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." *Id.* Support awards in excess of that minimum, however, are anticipated by R.C. 3119.04(B) and are not deviations. *See Freeman v. Freeman*, 9th Dist. No. 07CA0036, 2007-Ohio-6400, ¶ 22, citing *Guertin v. Guertin*, 10th Dist. No. 06AP-1101, 2007-Ohio-2008, ¶ 6. *See also Zeitler v. Zeitler*, 9th Dist. No. 04CA008444, 2004-Ohio-5551, ¶ 11 ("[U]nder R.C. 3119.04(B) there is no basis for 'deviation,' as the R.C. 3119.04(B) method prescribes that child support is to be set based on the qualitative needs and standard of living of the children and parents, not exacting calculations and deviations."). Although Dr. Bajzer urges this Court to apply the analysis employed in *Ohlemacher v. Ohlemacher*, 9th Dist. No. 04CA008488, 2005-Ohio-474, we note that *Ohlemacher* involved application of a previous version of the child support calculation now contained in R.C. 3119.04(B). Because that statute differed significantly from the current one, *Ohlemacher* is inapposite *See generally Cyr v. Cyr*, 8th Dist. No. 84255, 2005-Ohio-504, ¶ 50-57.

{¶6} Thus, "when the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is 'that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued.'" *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 24 (9th Dist.), quoting *Birath v. Birath*, 53 Ohio App.3d 31, 37 (10th Dist.1988). This determination is within the discretion of the trial court, and we review it for an abuse of that discretion. *See, e.g., Peters v. Peters*, 9th Dist. Nos. 03CA008306, 03CA008307, 2004-Ohio-2517, ¶ 39-41.

{¶7} Dr. Bajzer earned $364,000 in 2009, and the trial court imputed $45,000 income to Ms. Bajzer. The trial court's starting point for its analysis was the minimum level of support authorized by statute, or that provided by R.C. 3119.021 for an income of $150,000. The trial court concluded, however, that considering the parents' combined income of over $400,000, "[i]t is unjust, inappropriate and not in the best interest of these two children to order child support at the minimum capped level of $150,000[,]" which would result in a child support obligation of $2,312.75 per month. The trial court noted that Dr. Bajzer's and Ms. Bajzer's monthly expenses reflected similar standards of living, but also observed that Ms. Bajzer's expenses included the money she spent for herself and two children. The trial court determined that Dr. Bajzer's child support obligation should be modified to $6,000 per month. This determination was not an abuse of discretion.

{¶8} The parties' respective budgets reflect similar standards of living, a fact that, as the trial court observed, undercuts Dr. Bajzer's arguments that Ms. Bajzer's budget is extravagant and beyond the standard of living that they maintained during the marriage. Ms. Bajzer's expenses include her portion of the children's medical expenses as well as private tutoring, supplemental educational programs, extracurricular activities, and childcare

necessitated by the family's evening schedule. With respect to her daughter, Ms. Bajzer testified that private tutoring was necessary to maintain her performance in school. With respect to both children, she testified that the tutoring and enrichment activities benefitted them by supplementing the curriculum available at their current school in a manner consistent with the curriculum at Old Trail School, which they attended during the marriage and for the two years immediately after the divorce solely at Ms. Bajzer's cost. Notably, Dr. Bajzer did not dispute that these activities were beneficial or appropriate, nor did he testify that Ms. Bajzer's budgeted amounts for gifts and the children's parties were out-of-line with their standard of living during the marriage. Dr. Bajzer has argued that Ms. Bajzer's budget allocation for vacations is extravagant. In this regard, however, it is worth mentioning that the parties testified that during the marriage, Ms. Bajzer and the children spent much of the summer months at their family condominium in Florida. Although Ms. Bajzer continues to make the mortgage payment on the condominium until it is sold pursuant to the property division, neither she nor the children can use it, and their vacation expenses reflect the additional expense of lodging.

{¶9} The trial court determined that child support in the amount $6,000 per month is necessary to provide the Bajzer children with the standard of living that they would have enjoyed had the marriage continued. This figure is significantly less than the amount requested by Ms. Bajzer. It exceeds the level of support provided by R.C. 3119.022 for a family with income of $150,000 by around $4,000, but the parties' combined income of $409,000 is commensurately higher as well. The trial court's determination was not an abuse of discretion, and accordingly, we overrule Dr. Bajzer's first, second, and third assignments of error.

## ASSIGNMENT OF ERROR IV

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO IMPUTE INCOME TO APPELLEE AT THE INCOME LEVEL DETERMINED BY THE UNREFUTED EXPERT TESTIMONY OF APPELLANT'S EXPERT."

{¶10} Dr. Bajzer's fourth assignment of error is that the trial court erred by imputing $45,000 in income to Ms. Bajzer instead of $50,000. We disagree.

{¶11} In determining the appropriate level of child support, a trial court must calculate the gross income of the parents. *See* R.C. 3119.05. When a parent is unemployed, income includes potential income that may be imputed to the parent by the trial court. *See* R.C. 3119.01(C)(5)/(11). Potential income is determined by considering all relevant factors, including the parent's education, skills, training, experience, and earning capacity; the availability of jobs and prevailing wages in the parent's geographic area; any mental or physical disabilities of the parent; the ages and special needs of the children; and whether evidence demonstrates that the parent can earn the imputed income. R.C. 3119.01(C)(11). "[W]hen a court examines the earning capacity of a parent who is voluntarily unemployed or underemployed, it does so with a view toward imputing a specific sum of income to that parent. In turn, that sum will be combined with other gross income to arrive at a total gross income figure which will be used for the child support calculation." *Collins v. Collins*, 9th Dist. No. 10CA0004, 2011-Ohio-2087, ¶ 18. In the absence of an abuse of discretion, the calculation of imputed income will not be disturbed on appeal. *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), syllabus.

{¶12} A vocational evaluation of Ms. Bajzer was conducted by Anne Savage-Veh in 2006 and updated in 2009. In 2006, the evaluation contained the conclusion that Ms. Bajzer could return to the workforce in skilled positions that used her transferable skills at an income of approximately $45,000. When deposed after updating the evaluation in 2009, Ms. Savage-Veh

opined that under the same circumstances, Ms. Bajzer might expect to earn $50,000. Ms. Savage-Veh stressed that her evaluation was founded primarily upon Ms. Bajzer's employability as a female over twenty-five years old with a bachelor's degree. She did not interview Ms. Bajzer in 2006 or 2009, nor did her vocational evaluation take into consideration circumstances unique to Ms. Bajzer that might indirectly affect her ability to work full-time in a skilled position or Ms. Bajzer's physical limitations, of which she was not aware.

{¶13} Dr. Bajzer's position is that the trial court had no basis for accepting $45,000 as the level of Ms. Bajzer's potential income rather than $50,000. According to him, "[t]he trial court failed to provide any rationale whatsoever as to why the expert's opinion should not be followed beyond the care of the children, which [Dr. Bajzer's] expert specifically refuted." This argument misconstrues the substance of Ms. Savage-Veh's testimony and the analysis required by R.C. 3119.01(C)(11). Ms. Savage-Veh did not refute the care of the children as a consideration of Ms. Bajzer's potential income. What she did emphasize was that personal circumstances were beyond the scope of her vocational assessment, which focused on the statistical availability of jobs in and around Summit County for a female with a bachelor's degree and transferrable skills. Although perhaps beyond the scope of the vocational evaluation conducted in this matter, circumstances such as Ms. Bajzer's actual ability to work in light of her children's needs are precisely what a trial court is to consider under R.C. 3119.01(C)(11).

{¶14} In other words, Dr. Bajzer incorrectly suggests that his expert's vocational evaluation is qualitatively the same as the analysis that a trial court must conduct under R.C. 3119.01(C)(11). The trial court recognized as much:

> "The expert's deposition and report was helpful, but the Court balanced this report with Mother's testimony and exhibits, looked at the statutory factors included in Revised Code §3119.01(C)(11) and considered the case law when it determined Mother's potential income to be $45,000. Other factors considered

were Mother's age, physical limitations, twelve years as a full time mother, her difficulty in finding suitable employment once she actively started looking and her full time commitment to providing quality care for these children."

Considering the testimony at trial that the children's medical and educational needs require attention and flexibility on the part of Ms. Bajzer as their primary caregiver, this Court cannot conclude that the trial court abused its discretion in determining the level of her potential income. Dr. Bajzer's fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

"THE TRIAL COURT ERRED WHEN IT ORDERED APPELLANT TO PAY ANY PORTION OF APPELLEE'S ATTORNEYS' FEES."

{¶15} Dr. Bajzer's final assignment of error is that the trial court abused its discretion by awarding Ms. Bajzer $10,000 in attorney's fees despite noting that both parties' conduct prolonged consideration of her motion. We disagree.

{¶16} Under R.C. 3105.73(B), a trial court may award reasonable attorney's fees in connection with a post-decree motion if the court determines that such an award is equitable, with consideration for "the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate[.]" The parties' respective assets, however, may not be considered. *Id.* Because R.C. 3105.73(B) gives a trial court broad discretion to award attorney's fees, we review such an award for an abuse of discretion. *Miller v. Miller*, 9th Dist. No. 07CA0061, 2008-Ohio-4297, ¶ 71.

{¶17} Honing in on the trial court's observation that the high attorney's fees generated by this case were caused, in part, by both parties' conduct, Dr. Bajzer has argued that he should not be required to pay fees when both were at fault. It is true that the trial court expressed its frustration with the parties' lack of communication and cooperation, but contrary to Dr. Bajzer's assertion, this is not the only factor under R.C. 3105.73(B) that the trial court considered. Most

significantly, the trial court based its decision on the parties' incomes in light of the fees that it characterized as "exorbitant":

> These fees are more than Mother will earn this year, and Mother had no earned income to pay her fees during the proceedings. She liquidated an asset to pay her attorneys a $5,000 retainer. She borrowed dollars from friends. She has overwhelming credit card debt and attorney fees to pay.

> Father was the only one who had any earned income during these proceedings and he was able to pay his attorney during these proceedings. He did not deplete any assets to maintain his standard of living.

R.C. 3105.73(B) permits a trial court to consider the parties' incomes in determining an equitable attorney's fees award, and doing so based on a disparity in income, as here, is not an abuse of discretion. *See, e.g., Patterson v. Patterson*, 1st Dist. No. C-110144, 2011-Ohio-5644, ¶ 13; *Epitropoulos v. Epitropoulos*, 10th Dist. No. 10AP-877, 2011-Ohio-3701, ¶ 44-47; *Walton v. Walton*, 3rd Dist. No. 14-10-21, 2011-Ohio-2847, ¶ 46. Dr. Bajzer's fifth assignment of error is overruled.

### III.

{¶18} Dr. Bajzer's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

SCOTT S. ROSENTHAL, Attorney at Law, for Appellant.

ALICE RICKEL and LINDA SCHUSTER, Attorneys at Law, for Appellee.