[Cite as *Kannan v. Kay*, 2012-Ohio-2478.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

PERRY KANNAN

     Appellee/Cross-Appellant

     v.

SHANTI S. KAY

     Appellant/Cross-Appellee

C.A. No.     26022

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2004-12-4638

DECISION AND JOURNAL ENTRY

Dated: June 6, 2012

BELFANCE, Judge.

{¶1} Defendant-Appellant-Cross-Appellee Shanti Kay ("Mother") appeals from the decision of the Summit County Court of Common Pleas, Domestic Relations Division. Plaintiff-Appellee-Cross-Appellant Perry Kannan ("Father") also appealed from the decision. For the reasons set forth below, we affirm.

I.

{¶2} Mother and Father married on February 10, 2000. The parties had one child born of the marriage, K.K., on January 30, 2001. Father filed for divorce on December 10, 2004. A divorce decree was filed in 2008, which included a shared parenting plan, which generally entailed K.K. residing with Mother for the majority of the time, with K.K. spending several holidays and several weeks in the summer with Father. In August 2008, Mother filed a notice of intent to relocate from New Jersey to Texas. Subsequently, the parties engaged in extensive litigation.

{¶3} Ultimately, Mother filed a motion to terminate the shared parenting plan and reallocate parental rights and responsibilities and a motion seeking child support from Father. A magistrate held a hearing on the matter over the course of two days. The magistrate concluded that it was not in K.K.'s best interest to terminate the shared parenting plan, increased Father's parenting time, and allowed Father to have internet video communication with K.K. at least four times per week. The entry did not mention child support. Mother filed objections. The trial court overruled the vast majority of Mother's objections, but did conclude Mother was entitled to receive child support in the amount of $482.42 per month. Both parties have appealed pro se.

II.

MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT BY USING AN ABUSE OF DISCRETION STANDARD OF REVIEW AND FAILING TO CONDUCT A DE NOVO REVIEW OF THE RECORD UPON APPELLANT'S TIMELY FILING OF OBJECTIONS TO THE MAGISTRATE'S DECISION.

{¶4} Mother asserts in her first assignment of error that the trial court failed to conduct a de novo review of the record upon her filing objections to the magistrate's decision. We do not agree.

{¶5} Civ.R. 53(D)(4)(d) provides that, "[i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

{¶6} While the trial court in its judgment entry does cite the standard of review an appellate court applies when reviewing a trial court's decision concerning modification or termination of a shared parenting plan, that does not necessitate the conclusion that the trial court

failed to conduct an independent review. It is true that the trial court has discretion in deciding whether to modify or terminate a shared parenting plan. *See Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994) ("It has long been a recognized rule of law that for a reviewing court to overturn a trial court's determination of custody, the appellate court must find that the trial court abused its discretion."). Thus, the trial court's statements are not erroneous.

{¶7} We note that the trial court specifically stated that it reviewed the transcripts of the hearings and it is evident from the length and detail of the entry that the trial court independently reviewed the matter and considered Mother's objections; thus, there is no evidence that the trial court failed to comply with Civ.R. 53(D)(4)(d). Moreover, "[t]he independent review requirement of Civ.R. 53(D)(4)(d), * * * does not prohibit the trial court from deferring to the magistrate's resolution of credibility because the magistrate retains a superior position, as the trier of fact, to consider the demeanor of witnesses and evaluate their credibility." *Tabatabai v. Tabatabai,* 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, ¶ 14. Thus, the fact that the trial court concluded that the magistrate's assessment of the facts was supported by the record does not mean that the trial court failed to conduct an independent review. Accordingly, we overrule Mother's first assignment of error.

## MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT WHEN IT DENIED HER MOTION TO TERMINATE THE PARTIES' SHARED PARENTING PLAN AND REALLOCATE PARENTAL RIGHTS AND RESPONSIBILITIES NAMING HER AS THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN.

{¶8} Mother argues in her second assignment of error that the trial court abused its discretion when it failed to terminate the shared parenting plan and name her as the residential parent and legal custodian. We do not agree.

**{¶9}** Pursuant to R.C. 3109.04(E)(2)(c):

[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children.

**{¶10}** In the instant matter, the trial court concluded that it was not in the child's best interest to terminate the shared parenting plan. "[F]or a reviewing court to overturn a trial court's determination of custody, the appellate court must find that the trial court abused its discretion." *Masters*, 69 Ohio St.3d at 85.

In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2).

**{¶11}** R.C. 3109.04(F)(1) lists the following factors:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of

parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶12} Mother asserts that the trial court's factual findings with respect to R.C. 3109.04(F)(2) are not supported by competent, credible evidence; however, it is unclear what factual findings the trial court made that Mother believes are unsupported. Instead, it appears

that Mother is asserting that the evidence adduced concerning the R.C. 3109.04(F)(2) factors does not support the conclusion that maintaining the shared parenting plan was in K.K.'s best interest. We do not agree.

{¶13} Based upon the record before us, which does not include any of the parties' exhibits, as those were not made part of the record on appeal, we conclude that the trial court did not abuse its discretion in concluding that it was not in K.K.'s best interest to terminate the shared parenting plan. Essentially, the trial court agreed with the rationale of the magistrate.

{¶14} While there is substantial evidence that the parties do not get along, there was also evidence presented which indicates that terminating the shared parenting plan would not improve relations between the parties and, in fact, might make them worse. Both the trial court and the magistrate gave weight and credence to the testimony of the guardian ad litem. The guardian ad litem recommended that the shared parenting plan remain in place. *See* R.C. 3109.04(F)(2)(e). The guardian ad litem testified that she examined the best interest factors and concluded that they weighed in favor of maintaining shared parenting. The guardian ad litem emphasized that she was determining what was in the best interest of K.K., not the parties. She noted that she "generally found that [the parties] were in agreement on most issues, except they had problems with the transportation issues." *See* R.C. 3109.04(F)(2)(a). She believed that "each parent has the ability and has demonstrated that they encourage the sharing of love and affection and contact between [K.K.] and the other parent." *See* R.C. 3109.14(F)(2)(b). The guardian ad litem stated that she "found no evidence * * * that either party spoke ill of the other in front of K.K. * * * [and] that each parent understood that it's best for [K.K.] to have a strong bond and relationship with their other parent." The guardian ad litem found there was no history or potential for child abuse or domestic violence. *See* R.C. 3109.04(F)(2)(c). The guardian ad

litem testified that "[w]hile the parent[s] are not geographically near each other, that was still the case in the original shared parenting plan." *See* R.C. 3109.04(F)(2)(d). She stated that the distance did not keep or prevent the parties from communicating via email, which was their preferred method of communication. She acknowledged that, while there was animosity between the parties due to the repeated filings of various motions, she did not believe that terminating the shared parenting plan would help the situation. Instead, she believed that terminating the shared parenting plan would result in increased animosity. Further, since much of the litigation was centered on financial issues, the guardian ad litem remained hopeful that, once those issues were worked out, some of the animosity would decrease and the parties would be better able to communicate about issues related to K.K. The guardian ad litem testified that K.K. "wants both parents involved in her life." K.K. "wants both parents to be able to talk to each other for her sake." Moreover, the guardian ad litem testified that Mother's behavior was marginalizing Father and that the marginalization would only worsen if the plan was terminated:

> Right now, where the marginalization occurs is that Father is not being consulted. The father is not included in those discussions. The marginalization is that that will just continue. [K.K.] will not have her father's involvement, and she'll obviously be able to know this, that her mother is not going to involve her father in those discussions. That's where I believe it's * * * harming [K.K.], and that's what I'm looking at.

{¶15} In addition, the guardian ad litem testified that she thought that "the factors that would be against a shared parenting plan [are not] as present in this case[.]" The Director of Family Court Services for Summit County disagreed with the guardian ad litem's recommendation. While the Director agreed with many of the guardian ad litem's recommendations concerning parenting time and the Father having internet video communication with K.K., the Director did not believe that maintaining the shared parenting plan was in K.K.'s best interest, due to the difficulty the parties have communicating with each

other, the distance, and the repeated litigation on various issues. The Director recommended that Mother be the primary parent.

{¶16} From Mother's and Father's testimony, it is evident that they have difficulties amicably communicating with each other. It is apparent from Mother's and Father's testimony that they each believe the other is largely at fault for the difficulties they have faced in implementing the shared parenting plan. There was evidence that Mother frequently did not consult Father about issues related to K.K., and instead only informed him of what action she has decided to undertake. Father on the other hand, has been very rigid in his interpretation of the shared parenting plan, desiring to stick to the letter of the plan, even when Mother seeks to reasonably adjust it to fit the situation at hand. Given Mother's unwillingness to consult Father about K.K., it was not unreasonable for the magistrate and trial court to agree with the guardian ad litem that terminating shared parenting and giving sole custody to Mother could likely cause Mother to involve Father less, creating more animosity, and negatively impacting K.K. While shared parenting will certainly be challenging for the parties, the trial court ultimately focused upon what was in the best interest of K.K rather than the competing interests of the parents. Accordingly, we overrule Mother's second assignment of error.

MOTHER'S ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED AND ABUSED IT DISCRETION TO THE PREJUDICE OF APPELLANT WHEN IT MODIFIED THE TERMS OF THE SHARED PARENTING PLAN TO PROVIDE APPELLEE ALL HOLIDAYS AND NEARLY ALL NON-SCHOOL DAYS AND TO HAVE INTERNET VIDEO COMMUNICATION WITH CHILD FOUR TIMES A WEEK.

{¶17} Mother asserts in her third assignment of error that the trial court erred in modifying the terms of the shared parenting plan. We disagree.

{¶18} In modifying parenting time, the trial court found both a change of circumstances, namely Mother's move from New Jersey to Texas, and that the modification would be in K.K.'s best interest. *See Gunderman v. Gunderman*, 9th Dist. No. 08CA0067-M, 2009-Ohio-3787, ¶ 23; *see also* R.C. 3109.04(E)(1)(a). The factors listed in R.C. 3109.04(F)(1) apply in determining what is in the best interest of the child. In making its determination, the trial court noted that, due to the increased distance, the current parenting time schedule was no longer practical.

{¶19} The trial court's entry provided that Father will have parenting time "every long Thanksgiving holiday, half of * * * winter break, every Spring break, and eight weeks during the summer, to be separated by a period of summer parenting time with Mother. In addition, Father shall have at least two long weekends with [K.K.] between the end of summer and the Thanksgiving holiday."

{¶20} Mother asserts that this schedule provides her with almost no non-school days with K.K. While the trial court's modification may have reduced Mother's non-school time with K.K., the fact remains that K.K. still spends the vast majority of the time in Mother's care. When Mother lived in New Jersey, it was possible for the parties to facilitate the exchange of K.K. by meeting each other half-way. Given the added distance, that is no longer possible, and transporting K.K. to the other parent's custody now involves air travel. We cannot say the trial court's decision was unreasonable or arbitrary. The trial court could have taken into account the fact that transporting K.K. now involves air travel and involves K.K. traveling as an unaccompanied minor. The trial court could have reasonably concluded it was in K.K.'s best interest to spend longer amounts of time during any given visit with a parent in order to minimize the stress on K.K. which could occur given her young age and the fact that she was

traveling as an unaccompanied minor. Moreover, less frequent longer trips would minimize the costs to both parties, and perhaps lead to less animosity and bickering over financial matters, which in turn could benefit K.K.

{¶21} Mother also asserts that the trial court acted unreasonably in allowing Father to have internet video communication at least four times a week with K.K. The shared parenting plan already permitted K.K. to have unlimited phone contact with Father. Mother essentially argues that there is not enough time in the week for K.K. to communicate for up to an hour with Father four times a week. We note that two of the occasions can be on weekends when K.K. is not burdened with school responsibilities. Mother asserts that it would not be possible to have weekday internet video communication between Father and K.K. due to K.K.'s extracurricular activities. While Mother also made this argument during the hearing, the magistrate, and in turn, the trial court was free to disbelieve Mother as to the extent of K.K.'s extracurricular activities. The magistrate and trial court could have reasonably concluded that while it might be challenging to find the time to communicate with Father during the week, it would not be impossible to do so, as Mother asserts. Even though the trial court provided that Father could communicate with K.K. at least four times a week, the entry also notes that it is for *up to one hour* each time. Thus, the trial court's entry provides Mother with flexibility: it does not specify which days the communication has to occur and it limits the time to no longer than an hour. Moreover, Mother does not maintain that it is not in K.K.'s best interest to have internet video communication with Father. In light of the record before us, we cannot say that such a decision is unreasonable or not in the best interest of K.K. Accordingly, we overrule Mother's third assignment of error.

FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND MADE AN ERROR OF LAW WHEN IT ISSUED A CHILD SUPPORT ORDER BASED ON INCOME NOT EARNED BY THE CROSS-APPELLANT AND OBLIGOR IN VIOLATION OF OHIO REVISED CODE 3119[.]

FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ISSUED A CHILD SUPPORT ORDER WITHOUT INCLUDING PROVISIONS UNDER SHARED PARENTING GUIDELINES ORC 3119.24 AND DEVIATE FROM ORC 3119.22 WORKSHEET DULY CONSIDERING THE SIGNIFICANT AMOUNT OF TIME THE CHILD SPENDS WITH EACH PARENT.

{¶22} Father challenges the award of child support to Mother in his two assignments of error. First, Father asserts that the trial court based its determination on income that he did not earn. Second, Father asserts that the trial court erred in failing to deviate from the amount determined from the applicable worksheet.

{¶23} Generally, "[w]e review matters involving child support under the abuse-of[-]discretion standard." (Internal quotations and citations omitted.) *Lawrence v. McCraw,* 9th Dist. No. 10CA0079-M, 2011-Ohio-6334, ¶ 6. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotations and citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Father asserts that the trial court erred in determining Father's income because while Father had a salary, he asserts he was not being paid. Father testified that "[t]hey are to pay me $83,000 per year, but they haven't paid anything so far. It's – the issue is pending in court. So, once it's resolved, probably they will." Based on Father's testimony, there was evidence to support the trial court's finding regarding his income. The trial court was not required to believe that Father was not being paid, particularly if the only evidence that supported that assertion was Father's testimony. Moreover, Father's

testimony suggested that the matter would be resolved and that he would be paid. Thus, based on the limited testimony and evidence in our record, we cannot say that the trial court's finding concerning Father's income was unreasonable and, therefore, overrule his first assignment of error.

{¶24} Thus, we turn to analyzing whether the trial court erred in failing to deviate from the child support calculation obtained from the child support worksheet. There is no dispute that the combined income of the parties in this matter exceeds $150,000. "When the combined gross income of the parents exceeds $150,000, * * * child support is determined under R.C. 3119.04(B) * * *." *Bajzer v. Bajzer,* 9th Dist. No. 25635, 2012-Ohio-252, ¶ 5. R.C. 3119.04(B) states:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

{¶25} Thus, "[t]he level of support for a combined gross income of $150,000 is the starting point from which a trial court exercises its discretion in fashioning a child support award for parents with higher incomes." *Bajzer* at ¶ 5. "This Court has held that, [if] the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued." (Internal quotations and citations omitted.) *Collette v. Baxter,* 9th Dist. No. 24519, 2009-Ohio-5151, ¶ 18.

{¶26} The trial court applied R.C. 3119.04(B). Thus, despite calculating that the parties' combined incomes totaled $258,720, the trial court used the total child support obligation figure correlating to an income of $150,000. *See* R.C. 3119.04(B); R.C. 3119.021. The trial court awarded Mother that minimum calculation. "Downward deviations from that minimum require a determination 'that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount.'" *Bajzer* at ¶ 5, quoting R.C. 3119.04(B); *see also* R.C. 3119.24(A)(1) (noting that a court can deviate from the amount calculated using the schedule and appropriate worksheet, "if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code").

{¶27} Father's argument is unclear. He seems to assert it would be unfair to make him pay child support to Mother during the 83 days a year that K.K. spends with him, and thus, the trial court should have ordered a deviation from the calculated amount. Essentially, it appears Father believes he is entitled to automatic credit for the time K.K. spends with him. This Court has stated that "even though a shared parenting plan is involved, no automatic credit in the support order for the time the child(ren) reside with that parent is warranted." (Internal quotations and citation omitted.) *Irish v. Irish,* 9th Dist. No. 10CA009810, 2011-Ohio-3111, ¶ 26. Father does not offer any argument explaining how his circumstances are extraordinary, nor does he assert that the award is not in the best interest of K.K. *See* App.R. 16(A)(7); *see also Bajzer* at ¶ 5; R.C. 3119.24(A)(1). In light of Father's limited argument, we overrule his second assignment of error.

III.

{¶28} In light of the foregoing, we overrule the parties' assignments of error and affirm the judgment of the Domestic Relations Division of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

SHANTI S. KAY, pro se, Appellant/Cross-Appellee.

PERRY KANNAN, pro se, Appellee/Cross-Appellant.