[Cite as *Batcher v. Pierce*, 2013-Ohio-4677.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

KENNETH W. BATCHER

    Appellee

    v.

SERENA E. PIERCE

    Appellant

C.A. No.     26785

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2007-04-1123

DECISION AND JOURNAL ENTRY

Dated: October 23, 2013

---

WHITMORE, Judge.

{¶1}   Defendant-Appellant, Serena Pierce, f.k.a. Serena Batcher ("Mother"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I

{¶2}   Mother and Plaintiff-Appellee, Kenneth Batcher ("Father"), married in July 1995 and had four children during the course of the marriage: J.B., born in December 1997, L.B., born in July 2000, V.B., born in August 2002, and N.B, born in September 2004. In April 2007, Father filed for divorce. The parties entered into a shared parenting plan ("SPP"), and the divorce decree was issued on April 18, 2008. Per the decree, Father was ordered to pay $842 per month in child support and $4,000 per month in spousal support. The SPP named both Father and Mother residential parents and gave each parent half the week and alternating weekends with

the children. It further provided that Father's child support obligation would terminate if Mother's "household earnings exceed[ed] $100,000 per year after support obligation."

**{¶3}** In August 2008, Father filed a motion to terminate spousal support on the basis that Mother and her significant other were cohabiting. The trial court ultimately agreed to terminate Father's spousal support obligation, but Mother secured a reversal of that judgment on appeal. *See Batcher v. Batcher*, 9th Dist. Summit No. 25314, 2011-Ohio-1509. Nevertheless, Mother remarried on November 19, 2010, and the parties later stipulated that Father's spousal support obligation would terminate as of that date.

**{¶4}** While the spousal support dispute was ongoing, a variety of other motions were filed. Specifically, Mother sought to modify Father's child support obligation, to terminate the SPP, and to reallocate the parties' parental rights and responsibilities. Meanwhile, Father sought to modify the SPP and to terminate his child support obligation based on his claim that Mother's household income had begun to exceed $100,000 a year. A magistrate held a hearing on all pending motions over the course of two days.

**{¶5}** On December 14, 2011, the magistrate issued a decision, and the trial court adopted it. Of particular concern to this appeal, the decision: (1) denied Mother's requests to terminate the SPP and to reallocate the parties' parental rights and responsibilities; (2) terminated Father's spousal support obligation as of November 19, 2010; and (3) ordered Father to pay $1,080.50 per month in child support as of that same date. Both parties filed objections to the magistrate's decision. On January 9, 2013, the trial court overruled the parties' objections and entered judgment consistent with its December 14, 2011 decision.

**{¶6}** Mother now appeals and raises two assignments of error for our review.

II

<u>Assignment of Error Number One</u>

THE TRIAL COURT COMMITTED REVERSIBLE ERROR, AS A MATTER OF LAW, AND ABUSED ITS DISCRETION BY ORDERING THAT THE APPELEE (sic) PAY THE APPELLANT ONLY CHILD SUPPORT IN THE SUM OF $1,080.50 PER MONTH.

**{¶7}** In her first assignment of error, Mother argues that the trial court erred by only ordering Father to pay $1,080.50 per month in child support. Specifically, Mother argues that the court failed to establish a basis for the $12,966 downward deviation it employed to reach Father's monthly obligation amount. We agree.

**{¶8}** Generally, absent an error of law, "the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. "We review matters involving child support under the abuse-of-discretion standard." *Freeman v. Freeman*, 9th Dist. Wayne No. 07CA0036, 2007-Ohio-6400, ¶ 19, quoting *DeJesus v. DeJesus*, 170 Ohio App.3d 307, 2007-Ohio-678, ¶ 7 (9th Dist.). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶9}** In general, child support under an SPP is computed using the computation worksheet set forth in R.C. 3119.022. "When the combined gross income of the parents exceeds $150,000, however, child support is determined under R.C. 3119.04(B) * * *." *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 5. That statute provides:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order * * *, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

R.C. 3119.04(B). Thus, the statutorily-defined level of support for a combined gross income of $150,000 represents "the starting point" in the analysis when the parties' combined income exceeds $150,000. *Bajzer* at ¶ 5. *See also* R.C. 3119.021 (schedule of child support for one to six children based on combined gross incomes ranging from $6,600 to $150,000 per year). A court may, in its discretion, award a greater level of support. *Bajzer* at ¶ 5. To award a lower level of support, however, a court first must determine that an award at the $150,000 level "would be unjust or inappropriate and would not be in the best interest of the [children], obligor, or obligee." *Id.*, quoting R.C. 3119.04(B). "[T]he appropriate standard for the amount of child support is that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued." (Internal quotations omitted.) *Bajzer* at ¶ 6, quoting *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 24 (9th Dist.).

{¶10} Initially, we note that the parties here had an existing child support order that required Father to pay $842 per month in child support. To change Father's child support obligation, the court had to modify the existing order. "When modifying an existing child support order, a trial court must find that a change of circumstances has occurred." *Farmer v. Farmer*, 9th Dist. Medina No. 03CA0115-M, 2004-Ohio-4449, ¶ 10. "A change of circumstances is found if the recalculated amount is more than ten percent less or greater than the

amount previously required as child support." *Maguire v. Maguire*, 9th Dist. Summit No. 23581, 2007-Ohio-4531, ¶ 7. "The appropriate method for calculating whether the ten-percent requirement has been met is to take the existing child-support worksheet underlying the support order and substitute the parties' new financial information for that contained in the worksheet, employing the same calculations as those used for the original order." *Id.*, quoting *Farmer* at ¶ 10.

{¶11} Neither the magistrate, nor the trial court performed a change of circumstances analysis. Moreover, the record does not contain a copy of the parties' original child support worksheet. Although the magistrate's November 20, 2007 temporary orders indicate that "[t]he worksheet is appended as Exhibit A," nothing is appended. The only information in the record about the parties' original child support worksheet is that it resulted in a child support obligation to Father of $842 per month. Because the original worksheet is not in the record, it is impossible to perform "[t]he appropriate method for calculating whether the ten percent requirement has been met." *Maguire* at ¶ 7, quoting *Farmer* at ¶ 10. Assuming that the ten percent requirement has been met due to the termination of Mother's spousal support, however, we agree with Mother that the trial court failed to detail its rationale when it ordered Father to pay only half of the amount of child support established by the child support worksheet.

{¶12} There is no dispute regarding the figures that the court used to calculate Father's annual salary and bonuses. Further, there is no dispute regarding the court's decision to impute minimum wage to Mother on the basis that she is voluntarily unemployed. The new worksheet that the court completed, therefore, results in an unchallenged child support obligation for Father of $25,932 annually when insurance is provided ($2,161 per month) and $25,658 annually when insurance is not provided ($2,138.17 per month). Those amounts represent the statutorily-

defined level of child support that should have been "the starting point" for an award. *See Bajzer*, 2012-Ohio-252, at ¶ 5. Nevertheless, the trial court cut those amounts in half and only ordered Father to pay $12,966 annually when insurance is provided ($1,080.50 per month) and $12,829 annually when insurance is not provided ($1,069.08 per month). The court indicated on the worksheet that the "[d]eviation [is] based on Father's equal parenting time, household incomes and the contributions that he must make in kind for the care of his children."

{¶13} The SPP gives Mother and Father essentially equal parenting time, with Father keeping the four children Monday and Tuesday, Mother keeping them Wednesday and Thursday, and the parties alternating the weekends. Mother is an unemployed, part-time student, and Father is a computer engineer whose annual salary and bonuses result in an annual gross income of around $150,000. Mother testified that she remarried on November 19, 2010, and that her current husband shares custody of his two children with his ex-wife. Meanwhile, Father testified that his significant other moved into his home in August 2011 and that her two daughters and her mother sometimes stayed there as well. The 2010 joint tax return for Mother and her new husband reflects a total income of $98,454, but includes the $30,000 in spousal support payments that Mother received up until November 19, 2010. Accordingly, without the spousal support payments, Mother's household income is approximately $68,000 per year, less than half of Father's income. There was no testimony about what financial contributions, if any, Father's girlfriend made to his household.

{¶14} There was limited testimony at the hearing about the children's standard of living. Both Mother and Father acknowledged that the four children are engaged in numerous extracurricular activities, but there was no testimony regarding the costs of the activities. Father acknowledged that, in the past, he had refused to pay certain, unspecified expenses for the

children under the theory that expenses should be covered by child support. He also testified, however, that he no longer felt that way and helped with expenses. With regard to child care expenses, Mother testified that she rarely needed to have a babysitter care for the children because she did not work. Father, on the other hand, testified that he had spent almost $1,000 in child care in 2010 because he sometimes had to work on his days with the children. There also was testimony that the children had gone on vacations and attended camp within the last few years, but again, there was no evidence about the costs associated with those excursions.

{¶15} In his decision to deviate from the child support worksheet, the magistrate wrote that

> ordering support pursuant to the schedule would be unjust or inappropriate and would not be in the child's best interest. See R.C. § 3119.23. Father has the children one half of the time and must support their day to day needs. Father also must maintain a home large enough for the children and provide for their necessities. In addition, Mother shares her living expenses with her new husband and chooses not to seek employment. Therefore, the Court finds that ordering child support pursuant to the guidelines would be unjust, inappropriate and not in the children's best interest.

The trial court agreed with the magistrate's rationale. In its judgment entry overruling the objections to the magistrate's decision, the trial court wrote that

> [t]he parties['] [SPP] orders that the children spend equal time with each parent. Revised Code section 3119.23(D) specifically grants the court the ability to consider extended parenting time when deciding if a deviation in child support is appropriate, as well as shared living expenses (H), and any other factor under subsection (P).

The court then concluded, without further analysis, that the magistrate's decision was supported by the law and the evidence.

{¶16} It would appear that the magistrate and trial court simply halved the worksheet amount for Father's support obligation based on the fact that Father has the children half of the time. Yet, this Court has held that "no automatic credit in the support order for the time the

child(ren) reside with [the obligor] parent is warranted." *Kannan v. Kay*, 9th Dist. Summit No. 26022, 2012-Ohio-2478, ¶ 27, quoting *Irish v. Irish*, 9th Dist. Lorain No. 10CA009810, 2011-Ohio-3111, ¶ 26. Although Mother and Father have relatively equal time under the SPP, that fact, standing alone, does not entitle Father to an automatic reduction in support. *See Kannan* at ¶ 27. The support amount must depend upon the standard of living of the children and their best interests. *See Bajzer* at ¶ 5-6; R.C. 3119.04(B).

{¶17} Although the trial court also cited R.C. 3119.23(H) and 3119.23(P) in its judgment, the court failed to explain the basis for its reliance on those subsections. R.C. 3119.23(H) provides that a court may consider "[b]enefits that either parent receives from remarriage or shared living expenses with another person" in granting a deviation. In citing that section, the trial court presumably meant to refer to Mother's remarriage and her sharing of the household expenses with her new husband, as the magistrate specifically relied upon that fact in its decision to grant a deviation. There was also evidence, however, that Father had a live-in girlfriend. Neither the magistrate, nor the trial court discussed Father's living arrangement or whether he reaped any financial benefit from it. Instead, the magistrate and trial court focused solely on Mother. The magistrate and trial court also failed to discuss the fact that both Mother and Father had children from their significant others living in their respective homes at least some of the time; a fact that would undoubtedly affect household income. While R.C. 3119.23(P) allows a court to consider "[a]ny other relevant factor" in granting a deviation and the court here cited that subsection, the court failed to identify the additional relevant factor(s) it considered. It is, therefore, impossible to know what that factor or those factors were.

{¶18} The magistrate's logic in granting Father a deviation is curious, as virtually all of the statements he made could apply equally to Father and Mother. The magistrate found that

"Father has the children one half of the time and must support their day to day needs," but the same is true of Mother. Likewise, the magistrate found that "Father [] must maintain a home large enough for the children and provide for their necessities," but the same is true of Mother. Finally, the magistrate found that "Mother shares her living expenses with her new husband," but Husband also arguably shares his living expenses with his live-in girlfriend. Neither the magistrate, nor the trial court gave that possibility any consideration.

{¶19} The only fact upon which the magistrate relied that does not apply equally to both parties is the finding of fact that Mother is voluntarily unemployed. As noted above, Mother is a part-time student and testified regarding the numerous responsibilities involved in caring for four children. Although Mother has not sought employment, that fact must be viewed in light of the best interests of the children. *See* R.C. 3119.04(B). Neither the magistrate, nor the trial court considered that Mother's unemployment may largely eliminate the need for continuous child care for four children. It also allows the children to spend time at their home, instead of a child care facility. The fact that Mother is not working outside the home does not, by itself, support a deviation absent any further explanation for that result.

{¶20} Having reviewed the record, this Court must conclude that the trial court abused its discretion by failing to undertake an appropriate analysis in this case. As previously noted, the court did not first determine that a change of circumstances had occurred before modifying the parties' existing support order. There is also no evidence that the court properly considered the children's standard of living in selecting the amount of Father's support obligation. *See Wells v. Wells*, 9th Dist. Summit No. 25557, 2012-Ohio-1392, ¶ 46-48 (abuse of discretion where trial court refused to allow evidence on standard of living and did not consider children's

standard of living in awarding support). Consequently, this case must be remanded for the court to make the appropriate determinations. Mother's first assignment of error is sustained.

Assignment of Error Number Two

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT THE APPELANT (sic) HAD FAILED TO ESTABLISH A CHANGE OF CIRCUMSTANCES SUFFICIENT TO WARRANT TERMINATION OF THE SHARED PARENTING PLAN OF THE PARTIES.

**{¶21}** In her second assignment of error, Mother argues that the trial court erred by refusing to terminate the SPP on the basis that she had failed to show that a change of circumstances had occurred since the adoption of the SPP. Specifically, Mother argues that an SPP can be terminated upon a best interest analysis alone and, even if she was required to first show that a change of circumstances occurred, she did so.

**{¶22}** As previously noted, this Court generally reviews a trial court's action on a magistrate's decision for an abuse of discretion, but must do so "with reference to the nature of the underlying matter." *Tabatabai*, 2009-Ohio-3139, at ¶ 18. This Court reviews a trial court's decision to modify or terminate an SPP for an abuse of discretion. *Kannan*, 2012-Ohio-2478, at ¶ 10. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶23}** A court may terminate an SPP upon a determination that the SPP is not in the best interest of the children. *Kannan* at ¶ 9, quoting R.C. 3109.04(E)(2)(c). "A termination under this section does not require a showing of a change in circumstances or a showing that the advantages of the change outweigh the likely harm." *Hamby v. Hamby*, 9th Dist. Summit No. 23096, 2006-Ohio-6905, ¶ 6. It only requires a trial court to perform a best interest analysis under R.C. 3109.04(F). *Sindelar v. Gall*, 9th Dist. Summit No. 25022, 2010-Ohio-1960, ¶ 8-9.

Accord *Kannan* at ¶ 9-16; *Bentley v. Rojas*, 9th Dist. Lorain No. 10CA009776, 2010-Ohio-6243, ¶ 19.

{¶24} Mother argues that "the Record is quite clear that [she] sought 'termination' of the [SPP] and to be established as residential parent for the minor children of the parties." According to Mother, both the magistrate and trial court refused to terminate the SPP because they found that Mother had not established that a change of circumstances had occurred. Because a change of circumstances is not necessary to secure a termination of an SPP, Mother argues, the trial court erred in denying her request to terminate on that basis.

{¶25} The trial court did not refuse to terminate the SPP on the basis that Mother failed to demonstrate a change in circumstances. In fact, the trial court specifically wrote that "shared parenting may be terminated based on the best interest of the child alone." The trial court concluded that termination of the SPP was not in the children's best interest because the children have good relationships with both parents, they are well-adjusted, and Mother and Father had only experienced a "few instances of inflexibility." Consistent with this Court's precedent, the trial court only performed a change of circumstances analysis when examining Mother's request to reallocate the parties' parental rights and responsibilities. *See Gunderman v. Gunderman*, 9th Dist. Medina No. 08CA0067-M, 2009-Ohio-3787, ¶ 23. The trial court, therefore, did not apply the wrong test in considering Mother's motion. The judgment entry reflects that the court understood the distinction between a request to terminate a shared parenting plan and a request to reallocate and performed the distinct, respective tests for each.

{¶26} Mother has not argued that the trial court abused its discretion in concluding that the SPP was still in the best interest of the children. Although Mother's brief contains a blanket statement that it is in the children's best interest to name her the sole residential parent, she has

not explained why this is so. App.R. 16(A)(7). Both the guardian ad litem and the court services evaluator who testified were in favor of retaining the SPP and, as the trial court determined in its decision, there was evidence that the children were doing well overall. Mother does not take issue with any of the court's specific conclusions that the children have good relationships with both Mother and Father, that the children are well-adjusted, and that the problems that Mother and Father experience are, by and large, both uncommon and workable. As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). Mother's second assignment of error is overruled.

## III

**{¶27}** Mother's first assignment of error is sustained, and her second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
CONCURS.

HENSAL, J.
CONCURRING IN JUDGMENT ONLY.

{¶28} I concur in the majority's judgment. However, I would undertake a more limited review of Mother's first assignment of error.

{¶29} As the majority correctly states, the trial court must find that a change in circumstances has occurred in order to modify an existing child support order. *Farmer v. Farmer*, 9th Dist. Medina No. 03CA0115-M, 2004-Ohio-4449, ¶ 10. To determine whether or not a change of circumstances has occurred, the trial court must complete a new child support worksheet by substituting the parties' current financial information into the existing worksheet and employing the same original calculations to recalculate the amount of support. *Id*., citing *Thompson v. Boivin*, 1st Dist. Hamilton No. C-010697, 2002-Ohio-4628, ¶ 16. If the recalculated amount is more than 10 percent greater than the existing support amount, it "shall be considered by the court as a change of circumstances substantial enough to require a modification of the child support amount." R.C. 3119.79(A).

{¶30} While the parties had an existing child support order, the worksheet used to calculate that order is absent from the record. Moreover, the trial court never made the threshold finding that there was a change in circumstances to warrant a modification of the support order. The majority assumes that the 10 percent requirement was met due to the termination of Mother's spousal support. However, as the original worksheet is absent from the record, it is unclear whether the spousal support was figured into the child support calculation in the first instance. I would, therefore, reverse the trial court's judgment on the child support amount due to the failure to make a finding that a change in circumstances occurred.

APPEARANCES:

MICHAEL A. PARTLOW, Attorney at Law, for Appellant.

SUSAN K. PRITCHARD, Attorney at Law, for Appellee.