[Cite as *Brosky v. Krebs*, 2018-Ohio-5261.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF LORAIN | ) | | |

CHRISTINE BROSKY

    Appellant

    v.

JOHN KREBS

    Appellee

C.A. No.    17CA011161

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14JB42571

DECISION AND JOURNAL ENTRY

Dated: December 28, 2018

CARR, Judge.

{¶1} Appellant Christine Brosky ("Mother") appeals the judgment of the Lorain County Court of Common Pleas, Juvenile Division. This Court affirms in part, and reverses in part, and the matter is remanded for proceedings consistent with this opinion.

I.

{¶2} Mother and Appellee Dr. John Krebs ("Father") engaged in a lengthy extramarital affair which resulted in the birth of a son, E., on March 5, 2009. E. was later diagnosed with a speech disturbance, hypotonia, asthma, autism, ADHD, and various food allergies. In June 2014, Mother filed a complaint to establish paternity and to establish an order for child support. Genetic testing was conducted to confirm paternity.

{¶3} Following a hearing on the issue of child support, the magistrate issued a decision ordering Father to pay $5,000 per month in child support and ordered that it be retroactive to

January 1, 2012. In addition, the magistrate imputed $66,915.07 in income to Mother,[1] who was unemployed at the time of the hearing, ordered Father to provide health insurance coverage for E. and ordered that E.'s uninsured medical expenses be apportioned equally between the parties. The trial court adopted the magistrate's decision and entered judgment on it the same day. Mother filed objections and supplemental objections to the magistrate's decision. After a hearing on the objections, the trial court overruled them and adhered to its prior judgment.

{¶4} Mother has appealed, raising four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN IMPUTING INCOME OF THE PLAINTIFF IN THE AMOUNT OF $66,000 PER YEAR.

{¶5} Mother argues in her first assignment of error that the trial court erred in imputing $66,000 in income to her.

{¶6} "[W]e generally review a trial court's action on a magistrate's decision for an abuse of discretion, but do so with reference to the nature of the underlying matter." (Internal quotations and citations omitted.) *Harrison v. Lewis*, 9th Dist. Summit No. 28114, 2017-Ohio-275, ¶ 40. "In determining the appropriate level of child support, a trial court must calculate the gross income of the parents." *Stahl v. Stahl,* 9th Dist. Summit No. 27876, 2017-Ohio-4170, ¶ 19, quoting *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 11. R.C. 3119.01(C)(5) defines "[i]ncome" as used in Chapter 3119 as: "a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or

---

[1] While the magistrate referenced $66,915.07 in its decision, the number it used in the child support worksheet was $66,000.

underemployed, the sum of the gross income of the parent and any potential income of the parent."

> "Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:
>
> (a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
>
> (i) The parent's prior employment experience;
>
> (ii) The parent's education;
>
> (iii) The parent's physical and mental disabilities, if any;
>
> (iv) The availability of employment in the geographic area in which the parent resides;
>
> (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
>
> (vi) The parent's special skills and training;
>
> (vii) Whether there is evidence that the parent has the ability to earn the imputed income;
>
> (viii) The age and special needs of the child for whom child support is being calculated under this section;
>
> (ix) The parent's increased earning capacity because of experience;
>
> (x) The parent's decreased earning capacity because of a felony conviction;
>
> (xi) Any other relevant factor.
>
> (b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.

R.C. 3119.01(C)(11). "[T]he trial court cannot impute income to either party without first making a finding that the party is voluntarily unemployed or underemployed." (Internal quotations and citations omitted.) *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-

Ohio-2087, ¶ 27. "The burden of proof is on the parent who is claiming that the other is voluntarily unemployed or underemployed." *Stahl* at ¶ 19.

{¶7} "This Court reviews a trial court's factual finding that a parent is voluntarily unemployed to determine if it was against the manifest weight of the evidence." *Id.*, citing *Kent v. Kent*, 9th Dist. Summit No. 25231, 2010-Ohio-6428, ¶ 10-12. "The amount of potential income the court imputes once it finds voluntary unemployment, however, is a discretionary determination that this Court will not disturb on appeal absent an abuse of discretion." *Stahl* at ¶ 19, citing *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), syllabus.

{¶8} Mother appears to both argue that she was not voluntarily unemployed and also challenges the amount the trial court imputed to her.

{¶9} Mother testified that she is trained as an X-ray technician and from 2006 until 2011 she worked in medical sales. Originally she traveled to five states, but when she had E., the company downsized her and put her on an inside sales job. In 2008, Mother earned $65,795.16. In 2009, Mother made a total of $66,698.50. In 2010, Mother's earnings were $72,421.30. In 2011, Mother earned $54,361.32 from her employer and $8,384.00 in unemployment compensation. Finally, in 2012, Mother received $27,248.00 in unemployment compensation.

{¶10} Mother testified that she went on unemployment in July 2011 when she was downsized from her job and stopped receiving unemployment compensation in January 2013. She asserted that she attempted to seek similar employment when she was downsized but averred that she was unable to find employment because it "was impossible with the schedule and the amount of therapies that E[.] was starting to incur[.]" Mother maintained that, at the time of the hearing, her responsibilities for E[.] remained "a full-time, 24/7-plus job."

{¶11} E. was first diagnosed with a disturbance of speech in 2010, hypotonia in February 2011, and autism in May 2011. Mother immediately began to seek out services for E. Procuring those services sometimes required Mother to engage the services of attorneys. Mother was ultimately able to enroll E. in the Cleveland Clinic Center for Autism School for the 2014/2015 school year. E. attended that school from 8:30 a.m. until 3:00 p.m., Monday through Friday through the entire year, including summer. E. made progress at the school and graduated from it in August 2015. As of the hearing, E. was attending kindergarten at St. Jude's school.

{¶12} Mother points to a letter from a pediatric psychologist from the Center for Autism in support of her argument that E.'s needs prevented her from working. That letter is dated August 26, 2014 and notes that autism is a lifelong neurodevelopmental disorder. In the letter, the psychologist pointed out that "[e]arly, intensive, and consistent intervention is critical in assuring a child with autism makes progress in targeted areas and does not regress or plateau." The psychologist observed that E.'s enrollment in the school at the Center for Autism required Mother's participation in many aspects of the program and that Mother had a limited support system. However, the letter did not detail those participation requirements nor indicate that the same would prevent Mother from maintaining employment. Further, at the time of the hearing, E. was no longer attending that school and instead was enrolled at St. Jude's. When asked about her daily responsibilities for E., Mother responded that there was "the typical household stuff," cooking for him, purchasing special groceries due to his allergies, and taking him to doctor and therapy appointments after school.

{¶13} Given all of the foregoing, we cannot say that it was against the weight of the evidence for the trial court to find that Mother was voluntarily unemployed. While it may have been impossible, absent appropriate care, for Mother to work before E. was in school, shortly

after Mother filed her motion, E. was in school, thereby providing Mother with a window of time in which she would not have E. in her care. There was no testimony that E. was frequently ill or that it was regularly necessary for Mother to pick up E. from school early, such that it would interfere with her ability to maintain employment.

{¶14} Finally, Mother argues that the trial court erred in imputing $66,000 in income to her when there was no evidence presented on the prevailing wages in the community or the availability of jobs. *See* R.C. 3119.01(C)(11)(iv), (v). The record is clear that the trial court imputed the amount it did based upon averaging Mother's prior earnings from the years 2008 through 2011. Mother has cited to no law that required the trial court to hear evidence on prevailing wages or the availability of jobs in order for the trial court to impute income to Mother under these circumstances before the trial court. *See* App.R. 16(A)(7); *see also Justice v. Justice*, 12th Dist. Warren No. CA2006-11-134, 2007-Ohio-5186, ¶ 13 ("We note that while consideration of relevant factors outlined in the statute is mandatory, the trial court is required neither to hear evidence on each factor nor discuss each factor in its analysis.") (Internal citations omitted.). We note that Mother earned her highest wages in 2010, which corresponded to the time when E. first began to be diagnosed with medical problems. Given the evidence before the trial court, we cannot say that it was unreasonable for the trial court to conclude that Mother was capable of earning approximately $66,000.

{¶15} Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING THE CHILD SUPPORT ORDER TO COMMENCE JANUARY 1, 2012, RATHER THAN THE DATE OF THE CHILD'S BIRTH.

{¶16} Mother argues in her second assignment of error that the trial court erred in ordering that the child support be retroactive to January 1, 2012, as opposed to the date of E.'s birth.

{¶17} "[A] trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." (Internal quotations and citations omitted.) *Fraelich v. Parrish*, 9th Dist. Lorain No. 14CA010684, 2016-Ohio-445, ¶ 8.

{¶18} Pursuant to R.C. 3111.13(F)(3):

(a) A court shall not require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child or to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement, if both of the following apply:

(i) At the time of the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the child was over three years of age.

(ii) Prior to the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the alleged father had no knowledge and had no reason to have knowledge of his alleged paternity of the child.

{¶19} Here, there is no dispute that Mother's claim for retroactive child support was not barred by R.C. 3111.13(F)(3). While R.C. 3111.13(F)(3)(i) was satisfied, R.C. 3111.13(F)(3)(ii) was not.

This Court has held that it is the law of Ohio that the adjudicated natural parent of an illegitimate child has the duty to support such child from birth. Section R.C. 3111.13 of the Ohio Revised Code sets forth what may be included in a judgment in a parentage action. Under R.C. 3111.13(C), a judgment may include any other provision directed against the appropriate party to the proceeding, concerning the duty of support * * *. Section 3111.13(C) is broad enough to allow a child support award to be made retroactive to the date of birth of the child.

(Internal quotations and citations omitted.) *Fraelich* at ¶ 9.

{¶20}   R.C. 3111.13(F)(2) states that:

When a court determines whether to require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child, it shall consider all relevant factors, including, but not limited to, any monetary contribution either parent of the child made to the support of the child prior to the court issuing the order requiring the parent to pay an amount for the current support of the child.

{¶21}   Here, the trial court concluded that no evidence was presented demonstrating Father's income between March 2009 and December 2011.  Accordingly, the trial court awarded child support retroactive to January 1, 2012.  Mother points to an exhibit admitted at the hearing in support of her argument that there was evidence of Father's wages in 2011.  That document is a child support worksheet dated September 2014.  It does not specifically list Father's income for 2011.  The worksheet lists Father's overtime bonuses for years 1, 2, and 3, but it does not otherwise clarify what years those numbers correspond to.  Mother maintains that one of the years should represent 2011, but such is speculative in light of the ambiguity in the worksheet. Mother additionally argues that Father was an orthopedic surgeon throughout that time period and consistently earned over one million dollars per year since 2012.  It appears that she believes that the trial court should have attributed that income to Father irrespective of the lack of evidentiary materials supporting that income for an earlier time period.  Doing so would ignore R.C. 3111.13(E) which requires that, "[i]n determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall comply with Chapters 3119., 3121., 3123., and 3125. of the Revised Code."  *See also* R.C. 3119.05(J) ("When a court * * * requires a parent to pay an amount for that parent's failure to support a child for a period of time prior to the date the court modifies or issues a court child support order * * *, the court * * * shall calculate that amount

using the basic child support schedule, worksheets, and child support laws in effect, and the incomes of the parents as they existed, for that prior period of time."). R.C. 3119.05(A) provides that when a court computes the amount of child support to be paid, the parties' current and past incomes shall be verified by "electronic means or with suitable documents."

**{¶22}** Notably, Father testified that shortly after E.'s birth, in June 2009, Father sought treatment for an alcohol problem. Consequently, Father lost his medical license until September 2010. Thus, it would be pure speculation to presume that Father was earning over one million dollars per year from March 2009 through December 2011. The record contains no testimony or tax forms evidencing Father's income during that period. *See Homler v. Homler*, 9th Dist. Lorain No. 05CA008752, 2006-Ohio-2556, ¶ 31 (requiring verified income information to compute child support pursuant to R.C. 3119.05). And while it may have been possible under the circumstances for the trial court to impute income to Father for that time period, it did not do so, and Mother has not argued below or on appeal that the trial court should have done so.

**{¶23}** Given all of the foregoing, we cannot say that the trial court abused its discretion in not awarding child support retroactive to the date of E.'s birth. Mother's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING THE SUM OF FIVE THOUSAND DOLLARS ($5,000) PER MONTH IN CHILD SUPPORT[.]

**{¶24}** Mother argues in her third assignment of error that the trial court erred in ordering a child support award of $5,000 per month.

**{¶25}** When the combined gross income of the parents exceeds $150,000, the computation of child support is governed by R.C. 3119.04(B). R.C. 3119.04(B) states:

If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

{¶26} "The level of support for a combined gross income of $150,000 is the starting point from which a trial court exercises its discretion in fashioning a child support award for parents with higher incomes. Additionally, trial courts need not consider the deviation factors set forth in R.C. 3119.23 and 3119.24 when setting support amounts higher than the statutory amount for a combined gross income of $150,000 since [s]upport awards in excess of that minimum * * * are anticipated by R.C. 3119.04(B) and are not deviations." (Internal quotations and citations omitted.) *Wuscher v. Wuscher*, 9th Dist. Summit No. 27697, 2015-Ohio-5377, ¶ 27. Further, in cases where the parties were previously married, this Court has concluded that "the trial court is merely required to consider [the] amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued." (Internal quotations and citations omitted.) *Id.* While Mother references this prior statement of law in her brief, she has cited to no cases where this Court has applied it to situations involving parents who were never married. Instead, pursuant to the plain language of the statute, the trial court was to consider "the needs and the standard of living of the children who are the subject of the child support order and of the parents." R.C. 3119.04(B).

{¶27} Here, the trial court calculated the amount of child support that would be applicable using a capped income of $150,000 for Father. That amount was $1,242.72 per month. However, the magistrate and trial court rejected that amount after considering the income of the parties and the substantial needs of E. The trial court ultimately concluded that $5,000 per month in child support would "insure the best interests of the child and provide necessary assistance to [Mother] to provide and support the minor child."

{¶28} In examining E.'s expenses, the magistrate, and the trial court by adopting the magistrate's decision, found that "many of the minor child's expenses occurred in the past or [were] entirely speculative at this point." The magistrate went on to find that requiring Father to reimburse Mother for those expenses would result in a windfall to Mother. Accordingly, it appears the magistrate and trial court declined to take those expenses into account. Mother never objected to that factual finding by the magistrate and has not raised that issue on appeal. *See Hudson v. Cooper*, 9th Dist. Summit No. 27710, 2016-Ohio-1193, ¶ 4-5.

{¶29} The trial court had before it evidence that Father's standard of living was substantially higher than Mother's. Father was an orthopedic surgeon and had been for many years. Father's income far exceeded Mother's imputed income. Father lived in a large home, had a vacation home and a boat. In addition, Father had numerous expenses related to his first and current marriages. Father had four children from his prior marriage and four step-children from his current marriage. At the time of the hearing, only one of the children from Father's previous marriage was a minor. Father testified that pursuant to the divorce decree, he paid $12,000 per month in child support for his children from his previous marriage. Initially that sum was to support two children, but after the one child reached 18, Father was nonetheless to continue paying the same amount. Father explained that he and his ex-wife agreed on an amount

that would represent him paying $3,000 per child until the youngest child graduated from high school. Additionally, Father testified that under the divorce decree, he agreed to pay for his adult children's college and the one child's medical school expenses. Thus, Father estimated he paid approximately $100,000 per year for his adult children's education. Father also had to make yearly payments to his ex-wife for five years, which were not spousal support.

{¶30} Mother, as discussed above, previously worked in medical sales, averaging approximately $66,000 per year from 2008 through 2011. However, after Mother was downsized from her position in 2011, Mother did not find another job. Mother testified that she could not do so because of the responsibilities associated with caring for E., who, by 2011, had several medical problems. At the time of the hearing, Mother's house was in foreclosure and she was behind on her utility payments. Mother reported that she owed her mother $175,000 for costs related to E.'s care, but provided no written agreements evidencing the same. Instead, Mother submitted a handful of checks signed by her mother that did not amount to nearly that sum. It is clear from the record the magistrate and trial court did not find Mother's testimony credible on that issue. In addition, there was evidence that Mother's financial situation was not entirely caused by the costs related to raising and caring for E. Mother submitted evidence that, around the time E. was born, Mother paid to send her daughter from her prior marriage to a residential treatment facility at a cost of $10,000 per month and that that cost dissipated her assets.

{¶31} Nonetheless, there is no dispute that E. required extensive treatment and support that was undoubtedly costly. Mother focuses her argument on three particular expenses: the tuition and services at St. Jude's which totaled around $53,000, services for E. after school and on weekends, which were estimated at around $3,500 per month, and consultation estimates for

E. from the Center for Autism which totaled approximately $ 48,000 for the 2015-2016 school year. Nonetheless, we are mindful that the magistrate and trial court found many of E.'s expenses to be either speculative or to be past expenses. The estimate for services for E. after school and on weekends was dated 2014, and while Mother testified that E. still currently received those services at the time of the hearing, he did not receive them from that company. Thus, it is unclear what the cost of those services was for E. under the new company. The fees from the Center for Autism were for "[t]ransitioning [E.] to St. Jude's school[.]" Accordingly, it appears from Mother's testimony that those services would only have been provided for a single year.

{¶32} In addition, it is unclear from the record how much of the costs of E.'s education Mother was responsible for paying. Mother disclosed that, with respect to E.'s education at the Center for Autism, the school district covered that cost following a legal settlement. Mother testified that, with respect to the expenses for St. Jude's, she, her mother, and the school district were paying for that cost. Mother did not specify a portion that the school district was paying, and instead described it as a "small portion[.]"

{¶33} Mother received $2000 per month in temporary child support from Father, $722 per month in social security income for E., and approximately $300 per quarter for respite care for E. Mother also received $500 in food stamps per month before Father began paying temporary child support. Father estimated that he paid Mother $15,000 from the time E. was born up until the complaint was filed; Mother estimated that amount was $7,000.

{¶34} Given all of the foregoing, we cannot say that the trial court abused its discretion in awarding Mother $5,000 per month in child support. Mother failed to challenge below or on appeal the magistrate's and trial court's findings with respect to E.'s expenses, many of which

were found to be speculative or not current. Mother also failed to delineate the portion of E.'s schooling expenses that she was responsible for. Additionally, while Mother was clearly facing financial difficulty, Mother admitted that she dissipated her assets paying for her daughter's residential treatment. Moreover, while Father's standard of living was substantially higher than Mother's and Father made significantly more than Mother, Father also had numerous expenses stemming from his divorce. The trial court acknowledged that Mother would need more support from Father than the statutorily provided minimum in order to meet E.'s needs and provided an amount that it believed would meet those needs and be in E.'s best interests. Mother has not demonstrated under the facts of this case that the trial court abused its discretion in so deciding.

{¶35} Mother's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOCATING THE UNINSURED MEDICAL EXPENSES 50/50 BETWEEN THE PARTIES[.]

{¶36} Mother argues in her fourth assignment of error that the trial court abused its discretion in allocating the uninsured medical expenses equally between the parties. Considering the circumstances of this case, we agree.

{¶37} We begin by noting that neither the magistrate nor the trial court expressly stated how it determined the apportionment of the uninsured or unreimbursed health care costs. R.C. 3119.32(D) provides that a child support order shall include "[a] requirement that the obligor, the obligee, or both of them under a formula established by the court, with respect to a court child support order, * * * pay co-payment or deductible costs required under the private health insurance policy, contract, or plan that covers the children[.]" *See also Trombley v. Trombley*,

9th Dist. Medina No. 17CA0012-M, 2018-Ohio-1880, ¶ 31. R.C. 3119.32(D) does not further specify the formula the trial court should use.

**{¶38}** While in many cases, an equal split of these costs may be reasonable, here we can see no rational basis for so dividing these costs. At the time of the hearing, Mother was undeniably in a state of financial hardship and Father was earning well over one million dollars per year. Even assuming Mother's imputed income to be $66,000 per year, Mother would earn only a tiny percentage of the parties' combined incomes. We note that even if Father's income were capped at $150,000, as listed on the worksheet, Father would still have earned almost 70% of the parties' income. Given the lack of explanation as to the trial court's reasoning for ordering these costs to be equally shared, we agree with Mother that the trial court abused its discretion in doing so as this Court sees no reasonable basis for the parties to equally share the expenses.

**{¶39}** Mother's fourth assignment of error is sustained.

III.

**{¶40}** Mother's fourth assignment of error is sustained and her remaining assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed in part, and reversed in part. The matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,<br>
reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

WAYNE R. NICOL, Attorney at Law, for Appellant.

CAROL SZCZEPANIK, Attorney at Law, for Appellee.