[Cite as *Kenney v. Carroll*, 2025-Ohio-597.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

ROBERT J. KENNEY

    Appellee

v.

HEIDI R. CARROLL

    Appellant

C.A. No.     2024CA0061-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     09 DR 0598

DECISION AND JOURNAL ENTRY

Dated: February 24, 2025

SUTTON, Judge.

**{¶1}** Defendant-Appellant, Heidi Carroll appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, this Court affirms.

I.

**Relevant Background**

**{¶2}** In order to illustrate the complex history in this matter, and as an aid to the reader, we restate this Court's procedural synopsis as set forth in *Kenney v. Carroll*, 2021-Ohio-1911, ¶ 2-11 (9th Dist.) ("*Kenney III*").

> This case has a long procedural history, much of which is not relevant to this appeal. What is relevant is that Ms. Carroll ("Mother") and Mr. Kenney ("Father") married in 2008, had one son ("C.K.") together later that year, and that Father filed for divorce in 2009. In 2011, the trial court issued a decree of divorce and a judgment entry allocating parental rights and responsibilities, which adopted a shared parenting plan. At that time, the child support worksheets reflected that Mother had no income and that Father's income was $158,000. The trial court, therefore, ordered Father to pay Mother $1,268.17 per month in child support.

The parties filed several post-decree motions and have been before this Court in two prior appeals, one of which was a consolidated appeal. This Court issued its first decision in *Kenney v. Carroll*, 2017-Ohio-354 (9th Dist.) ("*Kenney I*"), and its second decision in *Kenney v. Carroll*, 2018-Ohio-1882 (9th Dist.) ("*Kenney II*").

In *Kenney I*, Mother appealed from the trial court's October 22, 2013, order adopting a magistrate's decision relative to several post-decree motions, including Mother's motion to modify child support. *Kenney I* at ¶ 4. The trial court's order addressed that motion, among others, and "determined that there was not a change of circumstances that would support a modification of child support for 2011, but there was such a change in 2012." *Id*. As a result, the trial court increased Father's monthly child support obligation to $1,531.62 for the year 2012. *Id*. "Based upon the 2012 child support figure, the trial court then determined that there was not another change of circumstances that would require a modification of support for 2013." *Id*.

After Mother appealed, Father moved this Court to remand the matter so that the trial court could rule on the parties' objections to the magistrate's decision, which this Court granted. *Id*. at ¶ 5. On November 5, 2015, the trial court sustained Father's objection to the child support obligation, and recalculated Father's obligation for the years 2012 and 2013. *Id*. It set Father's new monthly child support obligation to $1,003.26 effective January 1, 2012. *Kenney II* at ¶ 3. Mother appealed the November 5, 2015 order, and this Court consolidated that appeal with the then-pending appeal. *Kenney I* at ¶ 5.

Mother assigned several errors on appeal in *Kenney I*, including that the trial court erred in recalculating Father's child support obligation with a $150,000 income limit when there was no dispute that Father earned over $150,000. *Id*. at ¶ 25, 28. This Court agreed, but for jurisdictional reasons. *Id*. at ¶ 36. This Court noted that it remanded the matter only for the trial court to rule on the parties' objections to the magistrate's decision, and that neither party had objected to the magistrate's decision on the basis that the magistrate failed to use a calculation applicable to incomes over $150,000. *Id*. We concluded that the trial court exceeded its jurisdiction provided by the limited remand when it recalculated support in this manner and, insofar as the trial court imposed a $150,000 income limit, vacated its judgment. We then "remanded for the trial court to recalculate child support for the years at issue without utilization of the $150,000 income limitation." *Id*.

On remand, the trial court issued a judgment entry captioned as a nunc pro tunc entry, which addressed Father's child support obligation. In doing so, the trial court considered additional matters and conducted a new analysis. *Kenney II*, 2018-Ohio-1882, at ¶ 5. It again set Father's monthly child support obligation to $1,003.26. *Id*. at ¶ 6. Mother appealed that judgment entry in *Kenney II*, arguing, in part, that the trial court erred by using a nunc pro tunc entry to make substantive changes to its prior judgment entry regarding Father's child support obligation. *Id*. at ¶ 7. This

Court agreed, reversing and remanding the matter for the trial court to vacate its attempted nunc pro tunc entry and to calculate child support in accordance with Kenney *I*, that is, without utilization of the $150,000 income limitation. *Id*. at ¶ 13; *Kenney I* at ¶ 36.

On remand for the second time, the trial judge recused herself and a visiting judge addressed this Court's decision in *Kenney II*, as well as other pending motions.

. . .

In the April 21, 2020, judgment entry, the visiting judge addressed: (1) the calculation of child support from October 11, 2011, until October 22, 2013, and through June 6, 2019; (2) child support from June 6, 2019, forward, including a consideration of out-of-pocket medical costs and tax exemptions; and (3) Mother's motion to reconsider international travel. The visiting judge indicated that, for some unknown reason, the prior judge captioned her judgment entry (i.e., the judgment entry subject to this Court's remand in *Kenney II*) as a nunc pro tunc entry. The visiting judge indicated that the improper caption of that entry was the basis for this Court's reversal in *Kenney II*, not the merits of the prior judge's calculation of child support. It, therefore, concluded that nothing in *Kenney II* required it to reach a different conclusion with respect to the calculation of child support, which the visiting judge considered to be reasonable and appropriate.

The visiting judge then addressed the needs and standard of living of C.K., as required under [R.C.] 3119.04(B) when the combined annual gross income of the parents is above $150,000. In doing so, the visiting judge indicated that C.K. is well provided for, and that he enjoys a very high standard of living with Mother. Regarding C.K.'s education expenses, the visiting judge indicated that C.K.'s private-school education was previously funded through a scholarship and, when the scholarship ended, through a trust fund provided by his maternal grandparents. The visiting judge stated that it was anticipated that C.K.'s maternal grandparents would continue to fund C.K.'s private-school education through high school. The visiting judge also noted that Mother lives in a nice, newer residential development, and that she owns numerous rental properties. The visiting judge further noted that Mother's family owns a profitable business, and that she has access to vast familial financial resources that have allowed her and C.K. to enjoy a very high standard of living.

The visiting judge then discussed Father's support of C.K. beyond his child support obligation. The visiting judge noted that Father has two additional children with his now-wife, that he provides for C.K. 50% of the time, and that he supports C.K.'s extracurricular activities and interests. The visiting judge concluded that "[b]ecause of the high standard of living enjoyed by [Mother], her access to vast familial financial resources and [Father's] full financial support of [C.K.] during his 50% parenting time, [Mother] simply does not need any more than the minimum child support called for by R.C. 3119.04(B) in order to adequately provide for [C.K.'s] needs and standard of living[,]" and there is "simply no reason or evidentiary support to increase Child Support over the $150,000 limit." It then quoted portions

of the prior judge's nunc pro tunc entry regarding the child support calculation, noted that it agreed with that analysis, and emphasized that [R.C.] 3119.04(B) provides a floor, which Mother has no absolute right to go above. It concluded that it was Mother's burden to establish that it was in C.K.'s best interest to go above that amount, which she failed to do. It then concluded that Father's monthly child support obligation from January 1, 2012, through November 1, 2019, shall be $1,003.26, and Father's monthly child support obligation from November 1, 2019, forward shall be $1,003.26 until further order by the court.

{¶3} In *Kenney III*, Mother appealed the trial court's April 21, 2020 judgment entry raising seven assignments of error. We affirmed, in part, and reversed, in part, because the trial court "erred by relying on Mother's apparent access to 'vast familial financial resources[,]' and the unsupported fact that it was anticipated that Mother's parents would pay for [the child's] private-school education for purposes of calculating Father's child support obligation." *Kenney III* at ¶ 28. We also reversed for reasons not relevant to this appeal. *See Kenney III* at ¶ 40.

{¶4} On remand, the trial court calculated Father's child support obligation without consideration of Mother's alleged familial wealth or the alleged anticipation Mother's parents would pay for the child's private school tuition. The trial court determined Father was obligated to pay $16,000.00 in child support in 2012, a $781 increase from 2011. However, because the trial court found no change in circumstances, it denied the motion to modify child support.

{¶5} Mother now appeals raising four assignments of error for our review. We group certain assignments of error to aid our analysis.

## II.

### ASSIGNMENT OF ERROR I

**THE DOMESTIC RELATIONS COURT ERRED AND VIOLATED THE LAW-OF-THE CASE DOCTRINE, WHERE IT FAILED TO COMPLY WITH THE [MANDATE] OF THE []NINTH DISTRICT COURT OF APPEALS TO RECALCULATE THE CHILD SUPPORT FOR THE PARTIES WITHOUT UTILIZATION OF THE [$]150,000.00 INCOME LIMITATION AND UTILIZING THE CHILD SUPPORT WORKSHEET[.]**

{¶6}     In her first assignment of error, Mother argues the trial court failed to comply with this Court's mandate in *Kenney I* to recalculate child support for the parties in 2011, 2012, and 2013, going forward, without utilization of the $150,000.00 income limitation.  For the following reasons, we disagree.

{¶7}     The law of the case doctrine provides that "the decision of a *reviewing court* in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." (Emphasis in original.)  *Cohen v. Dulay*, 2017-Ohio-6973, ¶ 19 (9th Dist.), quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984).

{¶8}     In *Kenney III*, this Court addressed the very issue Mother re-argues in this appeal. In *Kenney III*, Mother raised the same assignment of error, stating:

> **THE DOMESTIC RELATIONS COURT ERRED AND FURTHER VIOLATED THE LAW-OF-THE-CASE DOCTRINE, WHERE IT FAILED TO COMPLY WITH THE MANDATE OF THE OHIO NINTH DISTRICT COURT OF APPEALS TO RECALCULATE CHILD SUPPORT FOR THE PARTIES IN 2011, 2012, AND 2013 WITHOUT UTILIZATION OF THE $150,000 INCOME LIMITATION.**

In overruling this assignment of error, the *Kenney III* Court stated:

> Regarding Mother's argument that the visiting judge failed to follow this Court's remand instructions, we disagree. The visiting judge specifically addressed this Court's remand instructions and considered the $150,000 income limit when analyzing Father's child support obligation. The visiting judge ultimately concluded that there was no basis to award child support above the $150,000 limit. As discussed below, the visiting judge did otherwise err in conducting that analysis, *but its error was not based upon its failure to follow this Court's remand instructions*.

(Emphasis added.)  *Kenney III*, 2021-Ohio-1911, ¶ 22 (9th Dist.).

{¶9}     Accordingly, because this Court has already spoken on this issue, and because the trial court followed the law of the case on remand as explained in addressing the remaining three assignments of error, Mother's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS NOT A CHANGE [IN]CIRCUMSTANCES SUFFICIENT TO JUSTIFY AN INCREASE IN CHILD SUPPORT.**

**ASSIGNMENT OF ERROR III**

**THE TRIAL COURT ERRED BY CALCULATING THE CHILD SUPPORT CONTRARY TO LAW BY FAILING TO INCLUDE MOTHER'S INCOME FOR THE PURPOSES OF CHILD SUPPORT AS REQUIRED UNDER R.C. CHAPTER 3119[.]**

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT ERRED FAILING TO INCLUDE A WORKSHEET FOR THE PURPOSES OF CHIL SUPPORT AS REQUIRED UNDER R.C. CHAPTER 3119, IN ORDER TO SET THE AMOUNT OF A CHILD-SUPPORT AWARD, A COURT MUST COMPLETE A [WORKSHEET] BASED ON THE ANNUAL INCOME OF EACH PARENT.**

{¶10} In her second, third, and fourth assignments of error, Mother challenges the trial court's change of circumstance analysis and utilization of the child support worksheets from 2010, 2011, 2012, and 2013, instead of creating a new worksheet based on the actual income of each party.

{¶11} "As a general rule, child support is calculated using the worksheet provided in R.C. 3119.022 with reference to the basic child support schedule set forth in R.C. 3119.021." *Bajzer v. Bajzer*, 2012-Ohio-252, ¶ 5 (9th Dist.). However, when the combined gross income of the parents exceeds $150,000, as set forth in the statute in effect at the time the motion was filed, child support is determined under R.C. 3119.04(B). R.C. 3119.04(B) states, in relevant part:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court . . . shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court . . . shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under

the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court . . . determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. *If the court . . . makes such a determination, it shall enter in the journal the figure, determination, and findings.*

(Emphasis added.)

{¶12} "The level of support for a combined gross income of $150,000 is the starting point from which a trial court exercises its discretion in fashioning a child support award for parents with higher incomes." *Bajzer* at ¶ 5, citing R.C. 3119.04(B). "Downward deviations from that minimum require a determination 'that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount.'" *Id.*, quoting R.C. 3119.04(B). "Support awards in excess of that minimum, however, are anticipated by R.C. 3119.04(B) and are not deviations." *Id.*

{¶13} Therefore, "when the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is 'that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued.'" *Bajzer* at ¶ 6, quoting *Berthelot v. Berthelot*, 2003-Ohio-4519, ¶ 24 (9th Dist.), quoting *Birath v. Birath*, 53 Ohio App.3d 31, 37 (10th Dist. 1988). "This determination is within the discretion of the trial court, and we review it for an abuse of that discretion." *Id.*

{¶14} Further, "[w]hen modifying an existing child support order, a trial court must find that a change of circumstances has occurred." *Farmer v. Farmer*, 2004-Ohio-4449, at ¶ 10 (9th Dist.). A change of circumstances is found if the recalculated amount is more than ten percent less or greater than the amount previously required as child support. *Id.*

{¶15} On remand from this Court, the trial court engaged in the following R.C. 3119.04(B) analysis, without considering any evidence of monetary support from Mother's

parents, as required by *Kenney III*. Specifically, the trial court found there was no credible evidence of vast familial assets or that Mother's parents would fund the child's private school education. The trial court then determined whether a change in circumstance occurred in accordance with the version of R.C. 3119.79 effective at the time Mother filed her 2012 motion. In so doing, the trial court stated, in relevant part:

> Father's original child support order of March 28, 2011, was based on a jointly submitted computation of November 1, 2010, when Father earned 100% of the [p]arent[s'] combined annual income of $158,000. [] The [p]arties' agreed annual child support order of $15,218 was approximately [10%] of Father's income in 2010, not an amount that would be unjust or inappropriate.
>
> Mother re[-]commenced employment in 2011 and both have continued to increase their income each year. In 2011, Father earned 93.9% and Mother earned 6.1% of their combined annual gross income of $170,825. [] In 2012, Father earned 80.34% and Mother earned 19.66% of their combined annual income of $209,373. [] In 2013, Father earned 73.36% and Mother earned 26.64% of their combined projected annual income of $245,380. [] On October 22, 2013, this court modified the parenting plan, equalized parenting time, and made Father responsible for providing daycare as needed during his parenting time.[1]
>
> Had parents remained married, as the income of both [p]arents increased, it is reasonable to expect the family's standard of living would also have increase[d]. It is not reasonable to expect that had parents remained married and their combined income increased, Father would have contributed less to the family's budget for his child. As Father admitted at trial, he and Mother would have jointly funded [the child's] private school education unless [the child] was eligible for scholarship funding of that education. The [c]ourt concludes from the direct and circumstantial evidence herein that [the child] would have enjoyed a higher standard of living had the [p]arents remained married. The [c]ourt finds that it would be just and appropriate that the child support commencing January 1, 2012, be higher than the basic child support schedule and applicable worksheet for a combined gross income of [$150,000]. That statutorily defined level of support was the starting point in this court's analysis of the appropriate and just obligation.
>
> Mother's pending motion to modify Father's child support obligation was filed on November 19, 2012, retroactive to October 11, 2011.
>
> . . .

---

[1] The trial court attached the relevant child support worksheets for the years in question to its judgment entry as Exhibits A, B, C, and D.

The [c]ourt has considered the needs and standard of living of the [c]hild and of the [p]arents, as well as the employment history and growing incomes of the [p]arents.[] The [c]ourt has considered in addition to all other factors required by law to be considered, adjustments to income including the cost of health insurance for [the child].  Rather than reducing Father's annual child support obligation for [the child], the [c]ourt finds that Father's annual obligation commencing January 1, 2012, should be $16,000.  This would be approximately 9.5% of Father's annual gross income for 2012.

However, the existing child support order form the March 28, 2011 [] judgment entry of divorce had established Father's annual obligation at $15,219.04.  R.C. 3119.79 effective at the time of the filing of Mother's motion required a more than 10% greater or more than 10% less than the amount of child support required to be paid by the existing order before Mother can establish a change in circumstances substantial enough to require a modification of the child support amount.  This court's finding that Father's annual child support obligation should be $16,000 would result in an increase of his obligation under the existing order [from the original decree) by approximately $781.  This is not more than 10% greater or less than 10% of the existing order.  Therefore, none of the existing orders as to child support should [] be modified.

{¶16}  We cannot say, based upon this record, that the trial court abused its discretion in denying Mother's 2012 motion to modify child support.  Pursuant to R.C. 3119.04(B), the trial court engaged in the proper legal analysis by computing a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of $150,00.00.  This basic child support obligation, which was based on a jointly submitted computation for the original child support order on March 28, 2011, amounted to $15,218.00 annually.  The trial court then considered the needs and the standard of living of the child who is the subject of the child support order and of the parents.  Due to the upward trajectory of the parties' incomes, the trial court reasoned the child and parents would have enjoyed a higher standard of living had the parties remained married.

{¶17}  Based upon this analysis, and in its discretion to evaluate support on a case-by-case basis, the trial court awarded $16,000.00 of annual child support for 2012.  Because the $16,000.00

child support award was based upon the trial court's discretion and analysis pursuant to R.C. 3119.04(B), a child support worksheet awarding exactly $16,000.00 was not required. The trial court then compared the annual 2011 child support obligation of $15,218.00 to the annual 2012 child support obligation of $16,000.00 to determine whether this change was more than 10% greater or lesser than the existing order. The trial court calculated that $16,000.00 in annual child support was not more than 10% greater than the existing annual child support order of $15,218.00. Thus, because there was not a change in circumstances, the trial court correctly denied Mother's motion to modify child support. Moreover, because the parties' combined incomes were over $150,000.00, and the trial court had discretion to decide the amount of child support for 2012 based upon its analysis specific to this case, the trial court did not err by not completing a new child support worksheet.

{¶18} Accordingly, Mother's second, third, and fourth assignments of error are overruled.

III.

{¶19} For the foregoing reasons, Ms. Carroll's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Division of Domestic Relations, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

HEIDI R. CARROLL, pro se, Appellant.

ROBERT J. KENNEY, pro se, Appellee.